IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **LAURA A. COOPER,** | * |
| | * |
| **Plaintiff,** | * |
| | *   **Civil No. TMD 13-2623** |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| **Defendant.** | * |

************

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Laura A. Cooper ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 11), Defendant's Motion for Summary Judgment (ECF No. 13), and Plaintiff's Reply (ECF No. 14).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1965, has a high-school education, and previously worked as a janitor. R. at 20, 80. Plaintiff applied protectively for DIB on November 6, 2007, alleging disability beginning on September 26, 2002 (later amended to September 13, 2006), due to depression, lower back problems, a cracked disc, arthritis in the back, high blood pressure, asthma, and a tumor in her neck. R. at 77, 234-40, 254, 258. The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 99-100, 124-29, 132-34.

ALJ William K. Underwood held a hearing on February 10, 2009 (R. at 30-69), and issued an unfavorable decision on May 13, 2009 (R. at 101-18). The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ on January 13, 2011. R. at 119-23, 177-84. The ALJ held another hearing by video conference on April 16, 2012, at which Plaintiff and a vocational expert ("VE") testified. R. at 70-98. On May 7, 2012, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of September 13, 2006, through the date last insured of December 31, 2008. R. at 8-27. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on July 22, 2013. R. at 1-7. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On September 10, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was

reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     State Agency Medical Consultants**

On February 7, 2008, P.H. Moore, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 491-98. Dr. Moore opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 492. Plaintiff occasionally could climb and stoop and frequently could balance, kneel, crouch, and crawl. R. at 493. She was to avoid all exposure to hazards, fumes, odors, dusts, gases, poor ventilation, etc. R. at 495. Plaintiff had no manipulative, visual, or communicative limitations, however. R. at 494-95.

On June 10, 2008, another state agency medical consultant, J. Johnston, M.D., assessed Plaintiff's physical RFC (R. at 612-19) and opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 613. Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 614. She had no manipulative, visual, communicative, or environmental limitations. R. at 615-16. Dr. Johnston remarked that her "[a]llegations are less than fully credible and are not supported by the radiographic and clinical evidence in [the] file." R. at 617.

On February 11, 2008, S. Boyer, Ph.D., evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairments under paragraph B of Listings 12.03, 12.04, and 12.09 relating to psychotic, affective, and substance addiction disorders. R. at 503-16. Dr. Boyer opined that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 513. Dr. Boyer did not find evidence to establish the presence of the criteria under paragraph C of these Listings. R. at 514. Accordingly, Dr. Boyer assessed Plaintiff's mental residual functional capacity ("RFC") on February 25, 2008 (R. at 519-22), and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; and to (3) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 519-20. Dr. Boyer's RFC assessment thus provided:

> Ratings show (mild to) moderate limitations in areas dealing with continuity of performance and social interactions.
>
> Residual capacity finds that [Plaintiff] functions in a generally independent fashion and can meet various personal needs from a mental and cognitive standpoint. [Plaintiff] is capable of completing daily living functions within the constraints of the medical conditions. A/C fluctuates at times. This individual manages within a basic routine.
>
> [Plaintiff] can relate with others and is capable of showing socially appropriate behaviors. Limitations reported in the social domain are due to the nature of the conditions in terms of interactions and relationships. [Plaintiff] is capable of negotiating in the community.
>
> [Plaintiff] retains the capacity to perform work-related tasks from a mental health perspective.

R. at 521.

On June 26, 2008, another state agency consultant, E. Edmunds, Ph.D., evaluated on a PRTF Plaintiff's mental impairments under paragraph B of Listings 12.04, 12.07, and 12.09 relating to affective, somatoform, and substance addiction disorders. R. at 620-33. Dr. Edmunds opined that Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 630. Because Dr. Edmunds also did not find evidence to establish the presence of the criteria under paragraph C of these Listings (R. at 631), Dr. Edmunds assessed Plaintiff's mental RFC (R. at 636-39) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (8) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (9) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 636-37.

Dr. Edmunds's mental RFC assessment thus stated:

> [Mental RFC] indicates mild to no difficulties with attention and concentration for one or two step tasks and routines. [Plaintiff] does not demonstrate severe difficulties with cognitive functioning. [Plaintiff] may experience difficulties on occasion with more complex tasks and persistence given the degree of symptoms, stressors, and medication side effects at the time.
>
> [Plaintiff] is able to relate to others and engage in appropriate social interactions, while experiencing some difficulty with mood and pain management. [Plaintiff] is likely to perform adequately in environments with limited social interactions, where she is able to work at her own pace with minimal stressors.
>
> [Plaintiff] would be expected to have some difficulty handling changes in environment and work requirements.
>
> [Activities of daily living] are functional at this time, and appear to vary mostly with medical/pain/mood symptoms.
>
> [Mental RFC] assessment finds mixed sustained A/C/persistence, moderate social limitations, and moderate impairments in adaptation. [Plaintiff] retains the functional capacity to perform tasks compatible with work-related functions equated with competitive employment on a sustained basis, from a mental standpoint.

R. at 638.

**B.     VE Testimony**

According to the VE, Plaintiff's past work as a janitor is semi-skilled and medium.[2] R. at 92. A hypothetical person of Plaintiff's same age, education, and work experience with the ALJ's RFC assessment as stated below could not perform her past relevant work, but could work as a mail sorter, price marker, or small-parts assembler. R. at 92-93. No work would be available to someone who would need an additional 60- to 90-minute break or who would be productive only 75% of the time, however. R. at 94.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below. *See infra* Part VI.

### III

### Summary of ALJ's Decision

On May 7, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of September 13, 2006; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a mail sorter, price marker, or small-parts assembler. R. at 13-21. The ALJ accordingly found that she was not disabled from September 13, 2006, through the date last insured of December 31, 2008. R. at 21.

> In so finding, the ALJ found that, through the date last insured, Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can never climb ladders/ropes/scaffolds; [Plaintiff] can occasionally perform all other postural activities; she can perform that that [sic] is unskilled in nature, work that is repetitive in nature and which involves following a routine and general goals versus production rate goals; she can have occasional interaction with others; she must work with things rather than people.

R. at 15. The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 16. The ALJ also weighed the opinion evidence in the record, giving "significant weight" to the findings of Drs. Johnston, Edmunds, and Boyer. R. at 19. The ALJ further found that "no treating or

examining physician has ever reported any sustaining disabling limitations due to [Plaintiff's] severe impairments nor has anyone restricted [Plaintiff] from any work because of these conditions during this time." R. at 19.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

**A.     The ALJ's Consideration of Opinion Evidence and Medication Side Effects**

Plaintiff contends that the ALJ erred in affording significant weight to the opinions of Drs. Johnston, Edmunds, and Boyer. Pl.'s Mem. Supp. Mot. Summ. J. 24, ECF No. 11-1. Rather, according to Plaintiff, the ALJ did not explain the weight given to her treating physicians' opinions, which should have been given controlling weight. *Id.* at 21, 25-27. The Commissioner points out that Plaintiff fails to identify the particular treating physicians' opinions on which her argument relies. Def.'s Mem. Supp. Mot. Summ. J. 15, ECF No. 13-1. In fact, as noted above, the ALJ found that "no treating or examining physician has ever reported any sustaining disabling limitations due to [Plaintiff's] severe impairments nor has anyone restricted [Plaintiff] from any work because of these conditions during this time." R. at 19.

Plaintiff nonetheless maintains that "[t]he records of these [treating] doctors should have been accorded greater weight than what was given in this case." Pl.'s Mem. Supp. Mot. Summ. J. 26, ECF No. 11-1. Records are not medical opinions, however. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Remand is not warranted in cases where an ALJ assigns little weight to opinions that do not address a claimant's ability to perform specific work-related functions. *See Beitzell v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-2669, 2013 WL 3155443, at *4 (D. Md. June 18, 2013). In any event, Plaintiff "has failed to point to *any* specific piece of evidence not considered by the

Commissioner that might have changed the outcome of [her] disability claim." *Reid v. Comm'r of Soc. Sec.*, __ F.3d__, No. 13-1480, 2014 WL 4555249, at *4 (4th Cir. Sept. 16, 2014). Although Plaintiff complains about the "significant weight" given by the ALJ to the opinions of the state agency consultants, "the law recognizes that state agency medical sources are 'highly qualified physicians, psychologists, and other medical specialists who are [also] experts in Social Security disability evaluation.'" *Hadaway v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-13-238, 2013 WL 5423955, at *3 (D. Md. Sept. 25, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)). Furthermore, in addition to relying on the non-examining opinions of the state agency consultants, the ALJ noted the lack of ongoing mental health treatment during 2007 (R. at 18) and her non-compliance with medication treatment in 2006 (R. at 17, 18, 564, 653-54, 658). The ALJ appropriately considered and cited the treatment notes from Plaintiff's treating sources. R. at 17-19. In short, because "it is unclear what 'opinions' her treating physicians provided" and because "it does not appear that any of [Plaintiff's] treating physicians provided any written opinions regarding her ability to work," Plaintiff's argument is unavailing. *Hadaway*, 2013 WL 5423955, at *2.

Plaintiff also asserts that the ALJ failed to consider the side effects of her medications, without specifically identifying any side effects that would render her disabled. Pl.'s Mem. Supp. Mot. Summ J. 27, ECF No. 11-1. Although Plaintiff testified to sleepiness and memory loss at her first hearing in February 2009 (R. at 51-52), the record reveals that she denied any medication side effects in December 2006 (R. at 427), May 2008 (R. at 586), and September 2009 (R. at 773). In any event, "[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." *Johnson*, 434 F.3d at 658 (quoting *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)). "In the

absence of any argument that side effects actually suffered by [Plaintiff] could have affected the outcome of the ALJ's analysis, any error in failing to include an express discussion of side effects is harmless." *Hadaway*, 2013 WL 5423955, at *3. Plaintiff's contention in this regard also is without merit.

**B.     The ALJ's Adverse Credibility Finding**

Plaintiff next maintains that the ALJ erred in determining her credibility by specifically relying on her inconsistent testimony regarding her illicit drug use. Pl.'s Mem. Supp. Mot. Summ. J. 28-30, ECF No. 11-1. As the Commissioner points out, however, the ALJ also discounted Plaintiff's credibility on the basis of minimal objective medical evidence (R. at 17), non-compliance with psychiatric medication (R. at 17, 564, 653-54), the lack of mental health treatment in 2007 (R. at 18), and the absence of an opinion from a treating or examining physician indicating any sustaining disabling limitations from her impairments (R. at 19). Moreover, an ALJ's adverse credibility finding can be based on a claimant's inconsistent statements, in addition to a lack of objective medical evidence to support the claimant's subjective allegations. *See Yost v. Barnhart*, 79 F. App'x 553, 556 (4th Cir. 2003) (per curiam); *see also Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Because an ALJ's findings regarding a claimant's credibility are entitled to great weight, Plaintiff's contention regarding the ALJ's adverse credibility finding is without merit. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.").

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is

**GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.

Date: September 19, 2014                                          /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge